UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
PASTOR, REV. GEORGE W.          :
CARTHAN, JR.                    :       HONORABLE JOSEPH E. IRENAS
               Plaintiff,       :
                                :       CIVIL ACTION NO. 05-4470 (JEI)
       v.                       :
                                :
ALLIANCE, DIVISION OF ROCK-     :              OPINION
TENN COMPANY; JOHN DOES 1-50    :
Fictitious persons or           :
corporations, jointly,          :
severally and/or in the         :
alternative,                    :
               Defendants.      :
```

**APPEARANCES:**

Pastor Rev. George W. Carthan, *Pro Se* Plaintiff

CAPEHART & SCATCHARD, P.A.
By: Robert J. Hagerty
Laurel Corporate Center, Suite 300
8000 Midlantic Drive- C.S. 5016
Mount Laurel, NJ 08054
       Counsel for Defendant


**IRENAS**, Senior District Judge:

    This is an employment discrimination and wrongful termination suit filed by Pastor George W. Carthan against his former employer, Alliance.[1]  Carthan asserts that he was terminated on account of his race, age and religion, and was retaliated against for filing civil rights complaints, all in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*  Additionally, he alleges tortious interference with his prospective economic advantage and

---

    [1]  Alliance is a division of the Rock-Tenn Company.

promissory estoppel.[2]  Alliance moves for summary judgment.

## I.

Carthan, a fifty-two year old African American male, began his employment at Alliance in Pennsauken, New Jersey, on July 16, 2002.  He was discharged less than one year later, on June 30, 2003.  Carthan was employed as a "Clerk," a supervisory position, in Alliance's Pennsauken facility.  This facility employs approximately 130 employees who primarily engage in product packaging and assembling point of purchase displays.

In the First Amended Complaint, Carthan alleges that, prior to his employment with Allaince, in a conversation with his soon-to-be supervisor, Lori Carter, Carter advised him that all employees are occasionally required to work overtime on Saturdays and Sundays. Carthan responded that because he was a Pastor, he would be unable to work on Sundays.

Once employed by Alliance, Carthan was trained by a Caucasian employee, James McNally, Chief Clerk of the Product Cage.  Soon thereafter, McNally was transferred to an Alliance facility in Morrestown, New Jersey.

The first alleged incident of racial discrimination occurred two weeks after the commencement of Carthan's employment, when he

---

[2] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of Delaware and Defendant is a Georgia corporation with its principal place of business in Georgia.  The amount in controversy exceeds $75,000.00.

walked into the "product cage" where three Caucasian employees were located.  Upon his entrance, one of them stated, "it would be best for all of us if you would just leave."  Carthan reported this remark to Carter, but did not specifically complain that the remark had racial implications. Carter denies awareness of the fact that Carthan believed this was a race-based comment.

Also beginning soon after the commencement of his employment, Carthan complains that he was scheduled to work on Sundays on several occasions.  It is undisputed that it was Carthan's responsibility to find replacements for his Sunday shifts, although on at least one occasion, Alliance bore the responsibility for him. It is also undisputed that Carthan fulfilled that responsibility when necesseary.

The events leading up to and on the weekend of June 25-26, however, are disputed. Carthan asserts that on June 23, 2003, Carter told him that he was required to work the Sunday shift on the following weekend, or face reprimand.  On Thursday, June 24, 2003, Carthan met with Carter and told her that he could not work on that Sunday, but could work on Saturday, to which Carter purportedly replied "something will have to be done about this." The next day, Carter again informed Carthan that he must work that Saturday and Sunday.  When Carthan reminded her of his restrictions, Carter allegedly replied, in the presence of another employee, that "if he [Carthan] couldn't work on Sunday

3

than he couldn't work on Saturday."  Carthan purportedly replied "Ok that's fine with me."

Alliance nevertheless secured coverage for his Sunday shift and told Carter that he was required to either work that Saturday or to find someone to cover the shift for him.  Carthan alleges that while he was able to find an employee to cover his Saturday shift, two Caucasian employees who were scheduled for shifts that weekend did not work and did not find coverage for their shifts, yet they were not reprimanded in any way.  Carthan, however, was discharged from Alliance the following Monday when he returned to work.

The replacement Carthan found to cover his Saturday shift is the source of much contention and the alleged reason for Carthan's termination.  Alliance disputes that Carthan found coverage for his shift.  It acknowledges that while Carthan presented Duane Jones to Carter as a substitute for his shift, Carter expressly disapproved of Jones because he was not adequately trained for Carthan's position.  Carthan maintains that Carter said nothing when he told her that Jones would be his substitute on Saturday, and therefore, he assumed Joens was a suitable substitute.  Jones did, in fact, cover for Carthan that Saturday, and was unable to perform required tasks.  Ultimately, at some point that Saturday after it became clear that Jones was inadequately trained, Frank Durst, Senior Clerk, asked another

supervisory Clerk, Rob Marrero, to cover for Jones.  As a result, Marrero worked a double-shift.  Marrero sent an e-mail to Carter the following Monday, June 30, complaining that Carthan provided an unacceptable substitute for the Saturday shift and that he was not a "team player."  Alliance contends that when Carter read this e-mail and became aware of Carthan's insubordinate conduct in failing to find a suitable replacement as Carter had allegedly ordered, Carthan was terminated.

Carthan's position was filled by McNally, who was transferred back to the Pennsauken facility a few weeks prior to Carthan's discharge.  Alliance claims that after Carthan was terminated, Carter asked the two first shift clerks, Marrero, African American, and McNally, a younger Caucasian man, to devise a plan to cover Carthan's former shift until the position was filed.  McNally volunteered to do so, and took over Carthan's position.

After his termination, Carthan filed a Charge of Discrimination with the New Jersey Division on Civil Rights and the Equal Employment Opportunity Commission (the "EEOC") on August 8, 2003, alleging wrongful discharge on the basis of race, age and religion.  On February 11, 2004, the EEOC issued a Notice of Right to Sue under Title VII and the Age Discrimination in Employment Act.  On June 24, 2005, Carthan filed a Complaint in the Superior Court of New Jersey, Burlington County.  On August

1, 2005, Carthan filed a First Amended Complaint, which was subsequently removed to this Court.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.**

**A.   NJLAD Claims**

Carthan asserts that he was discriminated against and wrongfully terminated due to his religion in violation of the NJLAD.  Because courts generally apply a similar analysis to discrimination claims brought pursuant to Title VII and the NJLAD, we will look to cases applying both in analyzing Carthan's claims.  *See Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 277 (3d Cir. 2001).

A plaintiff can establish a *prima facie* case of discrimination on the basis of religion under the NJLAD by showing that he or she: "(1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person." *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 14 (2002).[3]  "Once that threshold has been met, the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  After the employer does so, the burden shifts back to the plaintiff to show that the employer's

---

[3] Carthan, a *pro se* plaintiff, alleges religious discrimination.  It is not clear whether the claim is for disparate treatment, or for failure to accommodate.  Alliance treats it a simply a claim of failure to accommodate.  Because the theory upon which Carthan relies is unclear, we will analyze it under both.

proffered reason was merely a pretext for discrimination.   To prove pretext, however, a plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." *Id.*

Carthan sets forth sufficient evidence establishing a *prima facie* case.  It in undisputed that he is a Christian Pastor, held the position of "clerk" for which he was objectively qualified, and was terminated.  It is also undisputed that upon his termination, his position was filled, at least temporarily, by a similarly qualified individual.

Alliance's alleged non-discriminatory reason for firing Carthan was insubordination because Carthan did not work on a mandatory Saturday shift, as required by his supervisor, and failed to find an acceptable substitute for his shift.  Carthan claims that this reason is pretextual.  The evidence he adduces to support this contention is his claim that he did in fact find an acceptable substitute, and even if the substitute was not qualified, he was not made aware of this.  Assuming Carthan's allegations are true, it does not show that Alliance's decision to terminate his employment was based upon his religion. Carthan's obligations to his religious community conflicted with his ability to work on Sundays, not Saturdays.  There is no evidence, beyond Carthan's bald assertions, that his inability to

work Sundays was the motivation for his termination.

A second theory of discrimination on the basis of religion is one of failure to accommodate.[4]  In *Shelton v. U.M.D.N.J.,* the court noted that Title VII requires that employers "make reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in 'undue hardship' to the employer." 223 F. 3d 220, 224 (3d Cir. 2000)(internal citations omitted).

A plaintiff can establish a *prima facie* case of failure to accommodate by showing through competent evidence that: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed his employer of the conflict; and (3) he was disciplined for failing to comply with that requirement. *Id.*  If the employee establishes a *prima facie* case, the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship.  *See Shelton* at 223 F.3d 224 (3d Cir. 2000)*; United States v. Board of Educ.*, 911 F.2d 882, 886-87 (3d Cir. 1990).

Alliance moves for summary judgment, asserting that as a

---

[4] It is not clear whether there is a cause of action for failure to accommodate a religious conflict under the NJLAD.  When such cause of action is addressed, the analysis is done simultaneous with the analysis under Title VII. *See, e.g., Abramson v. William Paterson College,* 260 F.3d 265, 282 (3d Cir. 2001)(noting that "under the NJLAD and Title VII, the analysis [of religious discrimination] is essentially the same"). Because we conclude that even if there is such a cause of cation, Plaintiff's claim fails on the merits, we will assume without deciding that such a claim is available.

matter of law, the alleged conduct is not actionable under the
NJLAD because Carthan's conflict was not the cause for his
termination.  Specifically, it argues that Carthan did not
establish prongs one and three of his *prima facie* case.  We
agree.

Alliance argues that Carthan cannot establish prong one or
three.  Because Carthan has not established prong three, the
Court need not decide prong one.  It is undisputed that the
incident giving rise to Carthan's termination involved work on
Saturday.  Carthan alleged that his beliefs prevented him from
working on Sundays.  Thus, there can be no logical connection
between Plaintiff's religious beliefs and his termination.  No
reasonable juror could conclude based on this record that
Plaintiff's religious beliefs were connected to his termination.

Additionally, Carthan alleges that he was also discriminated
against and wrongfully terminated on the bases of both race and
age.  To establish a *prima facie* case of wrongful termination
under the NJLAD, a plaintiff must show that he: "(1) belongs to a
protected class, (2) was performing in the position from which
[he] was terminated, (3) nevertheless was fired, and (4) the
employer sought someone to perform the same work after [he]
left." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 457-58
(2005).  In an age discrimination claim, however, the last prong
requires a showing that the plaintiff was replaced by a candidate

10

sufficiently younger than he to permit an inference of age discrimination. *See Young v. Hobart West Group*, 385 N.J. Super. 448, 458 (App. Div. 2005). "The defendant then bears the burden of rebutting that presumption by articulating a legitimate and non-discriminatory reason for the termination, and the plaintiff is entitled to show that the reasons advanced by the defendant are a pretext for discrimination." *Zive*, 182 N.J. at 457-458.

Alliance contests that Carthan was performing his job because he did not obtain appropriate coverage for his missed Saturday shift, or approval for his coverage. Assuming, however, that Carthan made a *prima facie* case for race, age, and religious discrimination, he must show that Alliance's purported reason for termination was pretextual "by persuading the court . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Bergen Commer. Bank v. Sisler*, 157 N.J. 188, 211 (1999). He does not.

The basis of Carthan's claim of racial discrimination is that McNally, a Caucasian man, filled his position upon his termination, and that a Caucasian employee made a racist comment upon his entrance into the product cage when he said "it would be best for all of us if you would just leave." This comment, however, is ambiguous, was made by a subordinate employee, and though he believed it was made because of his race, he never told

11

his supervisor about this belief.

Carthan also asserts that two other, Caucasian employees were scheduled on a weekend shift and did not obtain coverage or show up, yet neither was fired.  Alliance denies this allegation.  These proofs, together, cannot sustain charges of discrimination and wrongful termination on the basis of race.  *Warner v. Fed. Express Corp.*, 174 F. Supp. 2d 215, 223 (D.N.J. 2001)(finding mere allegations of discrimination insufficient to withstand summary judgment).

Carthan's claim for age discrimination rests solely upon the fact that he was replaced by a younger man.  Because Carthan was hired and fired while a member of a protected age group, by the same individual,[5] he cannot withstand Alliance's motion for summary judgment.  *See Young v. Hobart West Group,* 385 N.J. Super. 448, 461 (App. Div. 2005)(the fact that the same person hired and fired an employee who was a member of the protected age group when hired "strongly counters against an inference of age discrimination.").  Moreover, there is no evidence in the record supporting an inference that Alliance's stated reason for filing his position with a younger employee was pretextual. Accordingly, his claim for age discrimination fails.

Carthan also claims that he was retaliated against for filing civil rights complaints with the New Jersey Division on

---

[5] The record reflects that Carter both hired and fired Carthan.

Civil Rights and the Equal Employment Opportunity Commission on
August 8, 2003.  Carthan, however, was terminated on June 30,
2003.  Accordingly, he could not have been subjected to an
adverse employment action, as is required to make a *prima facie*
case of retaliation under the NJLAD, because he was not employed
by Alliance at the time of the alleged retaliation.  *See Kluczyk
v. Tropicana Prods.,* 368 N.J. Super. 479, 493 (App. Div. 2004)(a
*prima facie* case of retaliation under the NJLAD requires a
showing that plaintiff was engaged in a protected activity known
to the defendant, was subjected to an adverse employment decision
by defendant thereafter, and there is a causal link between the
two).

    **B.   Promissory Estoppel**

    Carthan claims that Alliance promised him that he could
serve as its in-house common carrier and then breached that
promise when it denied him that position.  Promissory estoppel
requires a showing of a "(1) clear and definite promise; (2) made
with the expectation that the promisee will rely upon it, (3)
reasonable reliance upon the promise, (4) which results in
definite and substantial detriment." *Lobiondo v. O'Callaghan,* 357
N.J. Super. 488, 499 (App. Div. 2003); *Swider v. Ha-Lo Indus.*,
134 F. Supp. 2d 607 (D.N.J. 2001).  Carthan cannot defeat
Alliance's motion for summary judgment on this claim.

    Carthan alleges that he discussed serving as an "in-house"

common carrier with Bill Atcheson, an employee of Alliance, in March, 2003.  Purportedly in reliance upon that conversation,  he purchased a tractor, trailer, and cargo insurance, which Atcheson told him were required for the position.  Alliance, however, refused to permit him to serve as the in-house carrier.

Alliance disputes that Carthan can meet the first and third elements of the *prima facie case,* a clear and definite promise upon which Carthan reasonably relied.  We agree.  Carthan has not produced sufficient evidence to show a clear and definite promise.  Carthan concedes that Atcheson did not promise Carthan a specific amount of work, did not tell him that he would begin on any particular date, and did not discuss providing for load deliveries with him.  Carthan, however, purchased the items and returned to Atcheson so that Atcheson could get consent for Carthan to provide such services.  Any reliance that Carthan made upon these representations was not reasonable as a matter of law.

## C.   Intentional Interference with Prospective Economic Advantage

Last, Carthan does not state a claim for tortious interference with his prospective economic advantage.  He claims that Alliance interfered with his prospective economic advantage when it prohibited him from entering its property, and thus prevented him from fulfilling his delivery obligations under a contract with a third-party.

In order to establish a *prima facie* case, a plaintiff must

14

demonstrate that: "(1) [he] had some reasonable expectation of economic advantage; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain or there was a reasonable probability that the plaintiff would have obtained the anticipated economic benefit, and (4) the injury caused the plaintiff damage." *Mandel v. UBS/PaineWebber, Inc.*, 373 N.J. Super. 55, 79-80 (App. Div. 2004).

Prior to his employment with Alliance, Carthan owned and operated a small tucking company, Carthan Transportation, Inc. ("CTI"), from 1987 to 1991, when it discontinued operations.  CTI reinstated its common carrier license on June 9, 2003, and, at that time, contracted with Pioneeer.  The contract allegedly provided that CTI would pick up deliveries from Alliance, but did not guarantee any specific number of deliveries in any given time period.

On August 19, 2003, the EEOC generated its Notice of Charge of Discrimination as to Carthan's claims.  On August 20 2003, Carter prohibited Carthan from entering the property, allegedly in accordance with its policy of prohibiting former, discharged employee from entering its property.  It was not until August 22, 2003, however, that Alliance received the Notice of Charge of

Discrimination.[6]  Richard Kitchell, the President of Pioneer,
testified that after Carthan was prohibited from going to
Alliance, CTI was simply assigned other routes.

Carthan does not present evidence to demonstrate  Alliance's
actions were malicious, meaning, "the intentional doing of
wrongful act without justification or excuse." *Printing
Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 756
(1989)*.  Even if he could show that his termination was
discriminatory, he does not allege and it does not follow that
the motivation for the discrimination was to interfere with his
contract with Pioneer.  Furthermore, he has not put forth any
evidence that the interference caused him damage.  The President
of Pioneer himself testified that when Carthan was barred from
making pick-ups from Alliance, he was simply given another route.
Carthan does not set forth sufficient evidence to establish a
*prima facie* case of tortious interference with his prospective
economic advantage.

**IV.**

For the foregoing reasons, the Court will grant Alliance's
Motion for Summary Judgment on all counts.  An appropriate order
will be issued.

---

    [6] Carthan disputes the alleged date of receipt by Alliance, based only
upon the number of days between the time that the EEOC generated the letter
and the alleged date of receipt by Alliance.

Dated: January 29, 2007

s/Joseph E. Irenas
_____

**Joseph E. Irenas, S.U.S.D.J.**